J-S08040-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: D.D-E.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.L., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1513 MDA 2020 |

Appeal from the Decree Entered November 5, 2020
In the Court of Common Pleas of York County Orphans' Court at No(s):
2020-0149A

BEFORE: STABILE, J., KUNSELMAN, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:                     **FILED APRIL 14, 2021**

Appellant, A.L. ("Father"), files this appeal from the decree dated November 4, 2020, and entered November 5, 2020, in the York County Court of Common Pleas, which granted the petition of the York County Offices of Children, Youth, and Families ("CYF" or "the Agency") to involuntarily terminate Father's parental rights to his minor, dependent daughter, D.D-E.L. (also known as D.L.), born in October 2010 ("Child"), pursuant to the Adoption

_____

* Former Justice specially assigned to the Superior Court.

Act, 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).[1, 2] After a careful review,

we affirm.

The orphans' court summarized the procedural and factual history as

follows:

> [Child] has been an adjudicated dependent since March 25, 2019; however, this case was opened in December of 2018 and the family has had ongoing involvement with the Agency since 2017.[3] [Father] is the natural father of [Child] who was the subject of the termination proceedings. On July 27, 2020, the [c]ourt made the determination at the hearing that it would serve the best interest of [Child] to change the primary goal to adoption, with the concurrent goal of reunification. The goal was changed due to Mother's continued state of incompliance and Father's continuous status of minimal progress toward alleviating the circumstances that necessitated the placement such as stable housing and employment following his eight[-]month absence.[4] On October 20, 2020, a Status Conference was held to determine the progress of Mother and Father. Mother's progress remained the same and Father's remained the same except for that he reported that he was trying to obtain appropriate housing. On

---

[1] The parental rights of M.M.L. ("Mother") were terminated by the same decree. Mother did not file a separate appeal or participate in the instant appeal.

[2] While not referenced specifically by subsections, we observe that the Agency used language suggestive of Section 2511(a)(1), (2), (5), and (8).

[3] The Agency dealt with allegations of, among other things, substance abuse, domestic violence, inadequate shelter, and corporal punishment. *See* Stipulation of Counsel, 10/30/20, at ¶¶ 6, 7; Order of Adjudication and Disposition, 3/25/19, at 1-2.

[4] The evidence revealed an eight-month period, concluding in April 2020, where Father had no contact with Child or the Agency. N.T., 11/4/20, at 81-82, 104, 117. Evelyn Kunce, Pressley Ridge family advocate, stated, "He told me that he ran away and he wasn't there. He was absent because of fear of being picked up and taken away from his children." *Id.* at 81-82.

[November 4, 2020], a lengthy hearing on the Termination of Parental Rights was held[5], [6] in which the [c]ourt determined it was in [Child]'s best interest to involuntary terminate parental rights due to no advancements of Mother's or Father's goals from the prior hearing. . . .

Orphans' Court Opinion, 12/21/20, at 1-2 (footnotes added).

As to its determination with regard to Father, at the conclusion of the

November 4, 2020, termination hearing, the court relevantly stated:

Father does have a better relationship with [Child], but under the statute, Section 2511, Section 5 is grounds for termination of parental rights, which I quote, the child be removed from the care of the parents by the [c]ourt under voluntary agreement with the agency for a period of at least 6 months, the conditions which led to removal or placement of the child continue to exist and the parent cannot or will not remedy those conditions within a reasonable period of time, the services, assistance reasonably available to the parent are not likely to remedy the

_____

[5] Father was present and represented by counsel. Mother was initially present but chose to leave the proceedings part-way through. She was represented by counsel throughout the proceeding. The Agency presented the testimony of: Cameron Shertzer, York County Adult Probation Officer; Jodi Rupp., Families United Network drug and alcohol monitor; Sydney Tamburello, JusticeWorks family resource therapist; Michael Breeland, Pressley Ridge therapist; Evelyn Kunce, Pressley Ridge family advocate; Jeanette Nafzinger, Pressley Ridge family advocate; and Kirk Everts, Agency caseworker. Notably, Ms. Tamburello's and Ms. Nafzinger's testimony related solely to Mother. The court additionally interviewed Child *in camera*. Child was represented by legal counsel as well as a guardian *ad litem*, both of whom argued in support of termination of Father's parental rights. N.T., 11/4/20, at 141-43. Lastly, the court heard from a CASA (Court Appointed Special Advocate), who reiterated Child's desire for adoption. **Id.** at 143-44.

[6] The parties incorporated the dependency record as to Child. N.T., 11/4/20, at 7. It was noted that counsel submitted a joint stipulation on October 30, 2020. **Id.** We observe that this stipulation covers much of the factual and procedural history as to the dependency proceedings. **See** Stipulation of Counsel, 10/30/20.

conditions which led to the removal or placement of the child within a reasonable period of time[,] and termination of parental rights would best serve the needs and welfare of the child.

Unfortunately for Father[,] that's Father's situation. He cannot or will not remedy the conditions. He's still living in a motel. He did have a substantial period of time where he was not in contact with the child. It's in the best interest of this child for her to have permanency.

This is not a situation in which we've rushed the process. When I changed the goal a couple of months ago, we were at the 15[-]month mark. We're now at the, I think, 20[-]month mark, if I'm not mistaken, or very close to it.

The child needs permanency and Father has not remedied the issues that led to the determination of dependency in March of 2019. I say that with emphasis because that is quite a while ago. [Child] wants to be adopted. Her counsel agrees, her guardian [*ad litem*] agrees[,] and the CASA agrees.

I have a CASA report from a few months ago, July 20, 2020, and part of the reason why I changed the goal back in July of 2020, we had a hearing right after receiving that report and CASA's [*sic*] talked to this child almost every other day and knows this child very well.

There is just no doubt in my mind that [Child] wants to be adopted, so I'm signing the decree of involuntary termination of parental rights for both the Mother and the Father.

N.T., 11/4/20, at 147-48.

By decree dated November 4, 2020, and entered November 5, 2020, the court memorialized its decision and terminated Father's parental rights. Thereafter, on December 3, 2020, Father, through appointed counsel, filed a timely notice of appeal, as well as a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The orphans' court filed a responsive Pa.R.A.P. 1925(a) opinion.

On appeal, Father raises the following issue for our review: "Did the [l]ower [c]ourt abuse its discretion and err as a matter of law as the Agency failed to meet its burden to terminate Father's parental rights?" Father's Brief at 5.

In matters involving the involuntary termination of parental rights, our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* The trial court's decision, however, should not be reversed merely because the record would support a different result. *Id.* at 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *See In re R.J.T.*, [9 A.3d 1179, 1190 (Pa. 2010)].

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G. & J.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

The termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, and requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*) (citation omitted).

In the case *sub judice*, the Agency petitioned for termination of parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). We have long held that, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Here, we analyze the court's termination decree pursuant to subsections 2511(a)(5) and (b), which provide as follows:

     **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

     . . .

     (5)  The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

     . . .

     **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(5), and (b).

     To satisfy the requirements of Section 2511(a)(5), the moving party must produce clear and convincing evidence regarding the following elements: (1) the child has been removed from parental care for at least six months; (2) the conditions which led to the child's removal or placement continue to exist; (3) the parents cannot or will not remedy the conditions which led to removal or placement within a reasonable period time; (4) the services reasonably available to the parents are unlikely to remedy the conditions which led to removal or placement within

a reasonable period of time; and (5) termination of parental rights would best serve the needs and welfare of the child.

*In re B.C.*, 36 A.3d 601, 607 (Pa.Super. 2012) (citation omitted).[7]

In the case at bar, in concluding grounds for termination of Father's parental rights pursuant to Section 2511(a)(5) exist, the orphans' court reasoned:

> The [c]ourt did not err or abuse its discretion in terminating Father's parental rights under 23 [Pa.C.S. §] 2511(a)(5). The [c]ourt will address the following sub[-]issues under Father's Statement of Matter's [*sic*] Complained of issue three: 1) "the Agency was to provide a team to help Father but as a result of [COVID-19], the Agency did not provide this team for a number of months; 2) since a team was assigned, Father has been very cooperative with the team; 3) [F]ather continues to be employed on [a] full[-]time basis; 4) the only real goal to obtain is housing which a team would be able to help him with; 5) under [COVID-19], it is known that [it] is more difficult to obtain housing due to regulations regarding evictions and things of that kind; and 6) there is no basis to find that Father cannot remedy the circumstances which resulted in placement of the child in a reasonable amount of time."
>
> A. The Agency's Delay in Establishing a Team for Father
>
> The [c]ourt did not err or abuse its discretion in terminating Father's parental rights despite the Agency's delay in establishing a team for Father. The [c]ourt was not persuaded that having a team sooner or longer would have enabled Father to accomplish his goals. Notably, Father was absent for the latter eight months of the first thirteen months in attempts to avoid incarceration by law enforcement. Prior to this period, Father was sporadic and

---

[7] We observe that Sections 2511(a)(5) and (b) both require a court considering a termination petition to assess the needs and welfare of the relevant child or children. However, the needs and welfare analysis required by Section 2511(a)(5) is distinct from the needs and welfare analysis required by Section 2511(b), and thus, must be addressed separately. *See In re C.L.G*., 956 A.2d 999, 1009 (Pa.Super. 2008) (*en banc*).

incompliant with the Agency. Additionally, by the time Father did return the Agency was in midst of widespread shutdowns due to [COVID-19]. Had Father been compliant or even present during the latter eight months, the Agency could have provide[d] him the services in a more timely fashion. Accordingly, placing blame on the Agency or even [COVID-19] for his own short[-]comings is misplaced.

Moreover, Father moved for the fifth time to another motel during the same month that a team was provided for Father. Further, the advocate team member requested documentation to determinate Father's income. While Father did provide a letter from his boss stating that he was employed, Father refused to comply with the advocate's request for a pay stub or some sort of documentation to determine his income. Accordingly, despite the team's efforts for over two months, Father simply would not provide documentation to verify that he could in fact provide adequate income for housing and [Child]'s other needs. Therefore, the [c]ourt did not err or abuse its discretion in terminating Father's rights.

B. Father's Cooperation with the Team and Employment Compliance

The [c]ourt did not err or abuse its discretion in terminating Father's parental rights because Father was not entirely cooperative with the team. As noted above, Father did not cooperate by providing documentation to verify approximate income in order for the team to assist with housing. This was one of the main reasons a team was put in place. Additionally, the [c]ourt notes that Father was aware of [] the documentation from his employer that states that Father is a full-time employee but did not provide approximate income was insufficient. Yet, Father did not seek to remedy this problem. Accordingly, the [c]ourt did not err or abuse its discretion.

C. A Team's Ability to Remedy Father's Housing Issues

The [c]ourt did not err or abuse its discretion because the team could not help Father because he refused to provide the team with most essential information, income documentation request, to aid in his housing search. Additionally, testimony was given that Father's household has expanded to include his paramour along with his other two children which seemed to provide more obstacles in obtaining suitable housing for [Child]. This [c]ourt would opine that given Father's roadblocks to appropriate housing appeared to be his own doing in that he did

not comply with the team's request for income receipts and that he has prioritized his paramour over [Child]. Thus, the [c]ourt did not err or abuse its discretion in terminating Father's parental rights.

D. [COVID-19]'s Impact on Father's Housing Issues

The [c]ourt did not err or abuse its discretion in terminating Father's parental rights because [COVID-19] was not the sole barrier to Father's housing issues. The [c]ourt was not persuaded that [COVID-]19 regulations on housing are an appropriate excuse in this case. As noted above, Father was either incompliant with the Agency or absent until April 2020. The fifteen[-]month period for the dependency for [Child] was May 2020. As further discussed in the preceding paragraphs, Father's inability to comply with the team provided by the Agency only bolsters this [c]ourt's decision to terminate his parental rights. Accordingly, to claim that [COVID-19] caused his inability to obtain proper housing is simply inaccurate. Therefore, the [c]ourt did not err or abuse its discretion in terminating Father's parental rights.

E. Father's Ability to Remedy the Housing Issues within Reasonable Time

The [c]ourt did not err or abuse its discretion in terminating Father's rights because a reasonable time to remedy the housing issues has expired. Father has had twenty months to meet the Agency's goals. Additionally, Father also could not comply with the team's request for documentation over the two[-]month period they were placed with him to assist him with his environmental conditions. Further, Father's pattern of bouncing from one motel to another, running from the law, and placing blame on other parties simply did not persuade this [c]ourt that he had the capability of remedying the goals set forth by the Agency. Accordingly, the [c]ourt did not err or abuse its discretion in terminating Father's paternal rights under 23 [Pa.C.S. §] 2511(a)(5).

Orphans' Court Opinion, 12/21/20, at 7-10 (citations to record omitted) (footnotes omitted).

However, while Father acknowledges that housing still remained an issue, as he still resided in a motel,[8] Father argues that the court erred in determining that he could not remedy any housing deficiencies within a reasonable amount of time. Father's Brief at 18-23. He asserts, "There was no testimony presented to support the position that the condition cannot be remedied within a reasonable period of time." *Id.* at 20. Father continues,

> There is no basis to state that Father could not remedy this situation within a reasonable period of time. Despite this, that is exactly what the [l]ower [c]ourt did. Such a determination by the [l]ower [c]ourt is an error of law or an abuse of discretion. It appears that the [l]ower [c]ourt disregarded the totality of the evidence and instead picked out certain statements to support the decision it wanted to enter.

*Id.* at 22-23. Father points to the fact that the team, which was supposed to be assigned in order to help him obtain appropriate housing, did not materialize until five months after set forth as a goal in a March 2020 Family Service Plan. *Id.* at 19. Further, the Agency filed its termination petition one week after the team opened Father for services. *Id.* at 19-20. Nonetheless, Father indicates that the team confirms that he was cooperative and compliant and made efforts to apply for housing and that any difficulty did not appear to be related to finances. *Id.* at 20-21. Further, although he worked "under the table," he showed proof of employment in the form of a letter from his

---

[8] Conversely, Father maintains that "the issue of substance abuse has been addressed by Father." Father's Brief at 19.

- 11 -

employer. *Id.* at 20. Moreover, Father references difficulties relating to housing as a result of COVID-19, including obtaining housing. *Id.* at 21-22. He therefore contends, "It is unfair to say that if not for [COVID-19], Father would not have been able to obtain housing." *Id.* at 22. Lastly, Father argues that Child's needs and welfare do not support termination.[9] *Id.* at 23-24.

A review of the record supports the trial court's finding of grounds for termination under Section 2511(a)(5). As we discern no abuse of discretion or error of law, we do not disturb the court's findings. *See T.S.M.*, 71 A.3d at 267.

The record reveals the conditions leading to Child's removal still existed and were not likely to be remedied in a reasonable amount of time. Agency caseworker, Kirk Everts, testified that Father had not obtained or maintained stable housing. N.T., 11/4/20, at 115. This was confirmed by Pressley Ridge family advocate, Evelyn Kunce, who categorized Father's housing progress as "minimal" and acknowledged that his current housing situation was not appropriate for Child.[10] *Id.* at 87. Moreover, at the time of the hearing, Child had been in the care of the Agency for approximately twenty months.

---

[9] Father presents an argument that combines his discussion of this aspect of Section 2511(a)(5) with his discussion as to Section 2511(b). Father's Brief at 23-24.

[10] Mr. Everts additionally expressed concerns relating to substance abuse, specifically, alcohol. N.T., 11/4/20, at 123-24.

Stipulation of Counsel, 10/30/20, at ¶ 7. Further, the referral to Pressley Ridge had been made and a team opened for services for approximately four months, since August 2020.[11] N.T., 11/4/20, at 73, 83-84, 122.

As this Court has stated, "[A] child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa.Super. 2006). Hence, the record substantiates grounds for termination under subsection (a)(5). *See In re B.C.*, 36 A.3d at 607.

We next turn to whether termination was proper under Section 2511(b). As to Section 2511(b), our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa.Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the

---

[11] We further observe that there is an indication that Father was unwilling to engage in services at or around the time of Child's adjudication and disposition and that a June 2019 Status Review Order reflects a prior referral to a Pressley Ridge Family Engagement Team with reported unsuccessful attempts to contact Father by the team. Stipulation of Counsel, 10/30/20, at ¶ 6; Status Review Order, 6/27/19, at 1-2; Order of Adjudication and Disposition, 3/25/19, at 1.

parental bond. *In re K.M.*, 53 A.3d at 791. However, as discussed below, evaluation of a child's bonds is not always an easy task.

*In re T.S.M.*, 71 A.3d at 267. "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa.Super. 2008) (citation omitted).

When evaluating a parental bond, "[T]he court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa.Super. 2010) (internal citations omitted).

Moreover,

While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

[I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. . . .

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa.Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011)).

In the case *sub judice*, as to Section 2511(b) and Child's best interests, the orphans' court stated:

- 14 -

The [c]ourt will address the following sub[-]issues under Father's Statement of Matter's [*sic*] Complained of issue three: 1) "visits with the child and Father go well; 2) testimony was presented that Father complied with the majority of goals set forth for him in the Family Service Plans; and 3) Father has custody of two other children and little or no testimony was presented to show what impact termination would have on the minor child and her sibling relationships." As the [c]ourt has already addressed the relevant sections under to 23 [Pa.C.S. §] 2511(a), the sub[-]issues will only be addressed as each relates to 23 [Pa.C.S. §] 2511(b).

A. Visits with Father

The [c]ourt did not err or abuse its discretion in terminating Father's parental rights because a few visits were positive. While Father's initial visits with [Child] dating back to April 2019 to August 2019 were fairly consistent, from August 2019 to April 2020, there were no visits due to Father's disappearance. Following his return in April 2020 to September 2020, Father had some telephone visits and [Z]oom visits, some of which he failed to attend. Additionally, Father's in[-]person visits did not occur until September 2020 and there were only a handful. Further, the [c]ourt could not mak[e] a finding in Father's favor solely on this assertion because of the following assertions by the child's CASA representative:

> This CASA believes the familial bond once shared with [Child] and her paternal family (*i.e.*, [Father, his paramour,] and [Child's] three half-siblings) no longer exists. [Father]'s complete absence from all aspects of parenting [Child] including visitation and communication, engagement in [Child]'s education, and family celebrations have done irreparable harm to the relationship. Initially, [Child] had expressed on several occasions to this CASA and others that she misses her siblings and her father. This CASA spoke directly with both [Father and his paramour] to attempt to impress the importance of a continued relationship with [Child] but [Father] is resistant to services. [Father] did admit to abusing alcohol to his CASA. [Child] no longer asks to speak with [Father].

[CASA Report, 7/20/20], at 4.

The caseworker's testimony also indicated that the positive visits were not due to a parent[-]child bond.

Q. And when you weigh the bond the minor child has with the foster family versus Father, where does the stronger parental bond lie?

A. That's a tough question in the respect that I haven't seen them as [--] it's hard to say because I really haven't seen them as child/parent. I see them in very

positive visits. However, [Foster Mother] provides a more, I guess, family[-]oriented bond is a good way to do it.[12]

THE COURT: Sir, you described [Child]'s bond with her Father as being a good and positive bond. Do you think that she would suffer any emotional harm, if that bond were severed?

A. I think [she] would be upset, but I don't think there would be lasting emotional harm.

[N.T., 11/4/20,] at 110, 115. Moreover, Father never made any other efforts to reach out to the [A]gency to check on her wellbeing, the progress on her therapy, showed any interest in attending any medical or extracurricular activities, or sent letters or gifts to [Child]. Accordingly, to claim that the few visits that he participated in over the last year went well were not dispositive to this [c]ourt. Thus, this [c]ourt did not err or abuse its discretion in terminating Father's parental rights.

---

[12] Critically, the CASA highlighted and confirmed Child's positive relationship with her foster mother and her desire to be adopted. The CASA stated:

So[,] I have the accessibility to [Child] on a regular basis and I do talk to her far more than the once a month required for CASA. I speak with her probably almost every other day through different channels.

But she does -- just to reiterate what everyone else has said, she definitely wants to be adopted. She does have certain family members that she feels very connected to and she has expressed that she wants to maintain that connection to them.

But she is -- I've also been able to observe her in the [foster] home and she's very bonded with the other children in that home and definitely [Foster Parents]. I think she's looking forward to this being resolved so that she can move forward to continuing to flourish in that home.

N.T., 11/4/20, at 144. The CASA then responded, "Yes," when asked by the court, "So you think that she wants to be adopted?" *Id.*

B. Father's Compliance with the Agency's Goals.

The [c]ourt did not err or abuse its discretion in terminating Father's parental rights because quantity does not equal quality when a child's best interests and permanency are at stake. This [c]ourt would note that despite Father's completion of some of the numbered goals items, the crucial goals which would have allowed Father to properly care for [Child] were not completed. These goals relate to the housing and employment issues that were discussed in great detail above. Additionally, this [c]ourt heard testimony from the caseworker that there was an alcohol concerns [*sic*] dating back to September 2020.

Q. As we sit here today, are you concerned about current drug or alcohol issues with Father?

A. Yes.

Q. Why?

A. I observed a video that occurred on September 10th thereabout, where [Father] got into a verbal argument with two individuals in the parking lot of his motel, and one of the individuals had a firearm on him. Instead of going into the room and closing the door and calling the police, he continued to engage.

Q. Was Father charged as a result of this?

A. No.

Q. Were there drugs visible on this video?

A. No.

Q. But you have concerns of drug usage because of that?

A. I have concerns about alcohol use because of the sound of his voice.

[*Id.*] at 123-24. Given Father's recent DUI and his inability to comply with major [*sic*] mentioned above, the [c]ourt found the Caseworker's testimony concerning for the stability and safety of [Child]. Therefore, the [c]ourt did not err or abuse its discretion.

C. [Child]'s Relationship with her Siblings that are still in Father's Care

The [c]ourt did not err or abuse its discretion in terminating Father's parental rights. In response to Father's allegations that no evidence was presented regarding the affect the termination

- 17 -

would have on [Child]. and her siblings in Father's care, the [c]ourt would response that Father did not properly object in order to preserve this for appeal under [Pa.R.A.P.] 302(a). However, the [c]ourt would offer that evidence was offered through the incorporation of the July 20, 2020 CASA Report. Notably, that report volunteered that there was little bond between [Child], Father, and the half[-]siblings in Father's care.

Moreover, the [c]ourt was not persuaded by Father's assertion that his rights should not be terminated because he still has custody of the other two minor children. Specifically, the Agency currently has an open case with Father and the other two children in his care. Accordingly, Father's assertion was unpersuasive.

Finally, the [c]ourt would reiterate and offer the following additional rationales:

> THE COURT: Unfortunately for Father[,] that's Father's situation. He cannot or will not remedy the conditions. He's still living in a motel. He did have a substantial period of time where he was not in contact with the child. It's in the best interest of this child for her to have permanency.
>
> This is not a situation in which we've rushed the process. When I changed the goal a couple of months ago, we were at the 15[-]month mark. We're now at the, I think, 20[-]month mark, if I'm not mistaken, or very close to it. The child needs permanency and Father has not remedied the issues that led to the determination of dependency in March of 2019. I say that with emphasis because that is quite a while ago.
>
> [Child] wants to be adopted. Her counsel agrees, her guardian *ad litem* agrees and the CASA agrees. I have a CASA report from a few months ago, July 20, 2020, and part of the reason why I changed the goal back in
>
> July of 2020, we had a hearing right after receiving that report and CASA's [*sic*] talked to this child almost every other day and knows this child very well.
>
> There is just no doubt in my mind that [Child] wants to be adopted, so I'm signing the decree of involuntary termination of parental rights for both the Mother and the Father.

- 18 -

[N.T., 11/4/20,] at 147-48. Therefore, this [c]ourt did not err or abuse its discretion by involuntarily terminating Father's parental rights under 23 [Pa.C.S.] § 2511(b).

Orphans' Court Opinion, 12/21/20, at 11-16 (some citations to record omitted) (footnote omitted) (footnote added).

Father, however, argues that the orphans' court erred in finding that Child's needs and welfare favored termination. Father's Brief at 23-24. He states:

> The [l]ower [c]ourt felt that the best needs and welfare of the child were met by terminating Father's parental rights. It is argued that this is an error. The minor child enjoys seeing her Father and the visits were very appropriate. The only issue is that[,] because of [COVID-19], Father was not able to have in-person visits with the minor child for several months. He was permitted to have these visits on September 1[,] which happened to be the day the Agency filed to terminate his parental rights. It is easy for the caseworker to testify that the minor child has a stronger bond with the foster family. After all, it is the Agency that sought termination of parental rights. The Team testified as to the relationship between Father, the minor child and the siblings. The [l]ower [c]ourt erred in not giving more weight to this testimony.

*Id.* at 23-24.

Upon review, we again discern no abuse of discretion. The record supports the trial court's finding that Child's developmental, physical, and emotional needs and welfare favor termination of Father's parental rights pursuant to Section 2511(b). *See T.S.M.*, 71 A.3d at 267. Significantly, the evidence reveals that Child was placed in a pre-adoptive home where she had resided for approximately fifteen months and was doing well. N.T., 11/4/20, at 109, 114-15. Agency caseworker, Keith Everts, described Child as "very

easy and confident" and "comfortable" in the foster home. *Id.* at 109, 115. Despite a bond with Father, Mr. Everts observed a positive bond between Child and her foster family, particularly a parent-child bond with her foster mother. *Id.* at 109-10, 115. Likewise, the CASA recounted a positive bond between Child and her foster family. *Id.* at 144. Moreover, as reported by Child, counsel for Child, and the CASA, Child desired to remain with foster parents and to be adopted. *Id.* at 51-54, 58, 141, 144; CASA Report, 7/20/20, at 6 (unpaginated). Hence, Mr. Everts testified that he did not believe any harm would result from severing any such bond with Father. *Id.* at 115.

Accordingly, based upon our review of the record, we find no abuse of discretion and conclude that the orphans' court appropriately terminated Father's parental rights under 23 Pa.C.S. § 2511(a)(5) and (b).

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/14/2021